235 So.2d 915

Roy Clinton BUTLER

v.

STATE.

I Div. 29.

Court of Criminal Appeals of Alabama.

May 26, 1970.

Roy Clinton Butler, pro se.

MacDonald Gallion, Atty. Gen., and Joseph Victor Price, Jr., Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Defendant, Roy Clinton Butler, prosecutes this appeal from his conviction on a charge of buying, receiving, concealing, etc., stolen property (Sec. 338, Title 14, Code of Alabama 1940). He was sentenced to serve three years in the State penitentiary.

The evidence for the State tends to show that the home of Mr. Walker Taylor, South Royal Street, in Mobile, was broken into in August, 1967, and a pistol, holster, and a radio, of total value of $245.00 were stolen therefrom.

Officer Hubert Bell, a Mobile policeman, testified that on the night of August 30, 1967, he received information which led him and his partner, Officer Pickett, to go to the home of Roy Clinton Butler, where he lived with his parents. Officer Bell stated he told defendant, "(W)e would like for him to go to Headquarters with us. He put on his shoes and we went to Headquarters, *and he wasn't arrested then.* We carried him in the room and sat down and started questioning him about a burglary."

(Emphasis ours.) While at the police station, Officer Bell, in defendant's presence, telephoned and talked with one Bestada on Davis Avenue. After he had hung up the phone, defendant made an exclamation, after which defendant was placed under arrest. The witness testified that after defendant was arrested he was given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

The witness then stated, over defendant's objection, that he was suspected of having burglarized a home at 169 South Royal Street; that defendant said, "he didn't do it, but he would go on and tell the truth about it. * * * He give me an alias name, 'Smutty Buddy.' I asked him if he knew where we could locate him, and he said no. He said he didn't know. I said, 'Even if you didn't burglarize the home to get the merchandise, if you can tell me who Smutty Buddy is, I'll pick him up.' He couldn't tell me. He said, 'I'll show you where I sold it.' And he told me what Smutty Buddy gave him." The witness stated defendant described these articles as a pistol and holster, radio and credit cards; that defendant went with him to Lafitte's house, where he recovered the pistol, then to Eddie Smith's where he recovered the radio, then to a school yard, where he recovered the holster from a chimney of a burned house.

When the officers first began the questioning of the defendant at the police station he was "in custody," suspected of burglary. The warnings required by Miranda, supra, were not given until after the defendant's exclamation, for all practical purposes an admission of guilt, which resulted in his formal arrest.

The admission in evidence of the confession requires a reversal of this cause.

When Officer Bell testified, over objection, that he told the defendant he was suspected of burglarizing a home on South Royal Street, defense counsel moved for a

mistrial. The court inquired if "there was any juror in this room who feels that you might possibly be influenced by that remark in deciding whether or not this defendant did buy, receive, or conceal stolen property; do you think you might possibly consider the burglary phase of this case in arriving at a verdict? (Two jurors answer in the affirmative.)"

Thereupon the jury was excused from the room and in its absence the District Attorney stated: "Your Honor, we expect to show that Officer Bell said, 'We suspected.' He (defendant) said he didn't burglarize the house, another kid did it. All he did was take the property, and left part of it with Lafitte and sold part of it." The Court said, "I am going to let Officer Bell go into the entire transaction; then I'm going to ask the jury if they can try him on this offense contained in this indictment."

After Officer Bell testified, as set out hereinabove, defense counsel reminded the trial judge that his motion had not been ruled on. The court instructed the jury: "The defendant is charged with receiving and concealing stolen property. He is not charged with burglary of any house. Is there any juror in this box who feels that he cannot try this defendant only on the question of receiving and concealing stolen goods? If any juror thinks he might be inclined to try this defendant for the offense of burglary, please raise your hand. (No response) Deny the motion."

Defense counsel remarked: "May I respectfully except to the way the court phrased all that? The question is whether or not they have been improperly influenced by this testimony, one way or the other. I except to your ruling and ask you to make a proper determination." The Court: "I deny the motion for a mistrial."

Although our reversal is not necessarily based on this occurrence, it seems advisable in the event of another trial to express our view that the court's rulings in this instance did not overcome the prejudice that might have been engendered by testimony concerning the offense of burglary.

The judgment is reversed and the cause remanded.

Reversed and remanded.